1

2

3

4

5

6

7

8          **UNITED STATES DISTRICT COURT**

9          **SOUTHERN DISTRICT OF CALIFORNIA**

10

11   LINWORTH LLC,                                    CASE NO. 03cv2510-BEN (AJB)

12                              Plaintiff,            **ORDER GRANTING**
                                                      **DEFENDANTS AND**
13          vs.                                       **COUNTERCLAIMANTS'**
                                                      **MOTION FOR PARTIAL**
14                                                    **SUMMARY JUDGMENT**
                                                      **[Dkt. No. 63]**
15   JGR VENTURES, et al.,                            **AND DENYING PLAINTIFF AND**
                                                      **COUNTERCLAIM DEFENDANTS'**
16                                                    **MOTION FOR SUMMARY**
                              Defendants.             **JUDGMENT**
17                                                    **[Dkt. No. 78]**

18                          **I.  INTRODUCTION**

19          Now before the Court is Defendants and Counterclaimants' Motion for Partial Summary

20   Judgment [Dkt. No. 63] and Denying Plaintiff and Counterclaim Defendants' Motion for Summary

21   Judgment [Dkt. No. 78].  The Defendants and Counterclaimants' motion is granted and the

22   Plaintiff and Counterclaim Defendants' motion is denied.

23                          **II.  BACKGROUND**

24          The Complaint and Counterclaims focus on an office building located in Palo Alto,

25   California and a California limited liability company and its members who own or owned an

26   interest in the building.  The Complaint and Counterclaims both seek only declaratory relief

27   regarding whether one member's interest in the company which owned the building was

28   effectively transferred to another.  Specifically, there are three issues.  First, there is the question

of whether an assignment in June 2002, approved by the company's manager, was effective to transfer the economic interest of a member to a non-member is settlement of a lawsuit.  The second and third questions arise only if the 2002 transfer was ineffective. The second question is whether a 2003 amendment to the operating agreement of the company was a valid amendment. The third question asks whether a 2004 offer of first refusal completed an effective transfer of the economic interest.

Though the issues are simple, the backdrop is complex.  Sometime during the 1990's, a group of individuals formed a California limited liability company to invest in real estate known as Stanford Square LLC.  The Operating Agreement (dated 1998) governed the operation of the company.  Stanford Square LLC owned an office building in Palo Alto, California known as Stanford Square.[1]  During the year 2002, Stanford Square LLC and its real estate was managed by Stanford Square Management Company, a Wyoming corporation, with Joan G. Rounds as its president.  One of the members of Stanford Square LLC was another entity associated with Joan Rounds: JGR Ventures.  JGR Ventures is a Colorado general partnership comprised of partners Joan Rounds and JGR Properties, Inc., a Colorado corporation.

Unrelated to the operation of Stanford Square LLC, a bankruptcy proceeding in Colorado would eventually involve Joan Rounds and her business interests.  In connection with the liquidation of Consolidated Investment Services, Inc., a bankruptcy trustee by the name of Stephen E. Snyder was appointed.  Snyder sued Joan Rounds.  Snyder and Rounds decided to settle the litigation.  The settlement required Rounds to transfer to Snyder (through his designee) all of the membership interest that JGR Ventures held in Stanford Square LLC.  That interest was approximately 2.3 percent.  Bankruptcy trustee Snyder designated a trust set up for his benefit as the entity to which Joan Rounds would transfer her 2.3% interest in Stanford Square LLC in settlement of the litigation between them.  The trust was the 100 Hamilton Grantor Trust, with Charles A. Ramunno, a Colorado resident, as the trustee.  Of these background facts there is no genuine dispute.

---

[1]Though not relevant to the dispute, it appears that the Stanford Square property was obtained by virtue of each member contributing their entire interest from another limited liability entity (*i.e.*, Stanford Square LLLP, a Connecticut limited liability limited partnership).

1    Moreover, there is no genuine dispute as to the material facts about the actions that took

2    place next and which form the basis for the present lawsuit.  Two documents were drawn.  The

3    first document was an assignment of interest in Stanford Square LLC (dated June 20, 2002).  The

4    document reflects an assignment to the 100 Hamilton Grantor Trust.  The document reflects an

5    Assignment of all of the interest in Stanford Square LLC held by JGR Ventures, Joan G. Rounds

6    as an individual and a partner of JGR Ventures, and JGR Properties, Inc. as a partner in JGR

7    Ventures, and "Joan G. Rounds, the sole shareholder and president of Stanford Square

8    Management Company ('SSMC')."  The second document is a Consent to the assignment

9    executed by the manager of Stanford Square LLC, *i.e.*, Joan G. Rounds as president of Stanford

10   Square Management Company.  It is the legal effect of the assignment and the consent to

11   assignment that forms the basis of the instant action.

12                                      **III. LEGAL STANDARD**

13   Federal Rule of Civil Procedure 56(c) governs motions for summary judgment.  Rule 56

14   permits entry of summary judgment prior to trial where there is no genuine issue of material facts,

15   thereby "secur[ing] the just, speedy and inexpensive determination of every action."  *Celotex*

16   *Corp. v. Catrett*, 477 U.S. 317, 325, 327 (1986).  The legal standards for summary judgment are

17   familiar and need little discussion here. Summary judgment is appropriate if the "pleadings,

18   depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,

19   show that there is no genuine issue as to any material fact and that the moving party is entitled to

20   judgment as a matter of law."  Fed.R.Civ.P. 56(c).  A fact is material if it "might affect the

21   outcome of the suit under governing law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255

22   (1986).

23   The movant has the initial burden of demonstrating that summary judgment is proper.

24   *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).  The movant is not required to produce

25   evidence showing the absence of a genuine issue of material fact, nor is he or she required to offer

26   evidence negating the non-movant's claims. *Lujan v. Nat'l Wildlife Federation*, 497 U.S. 871, 885

27   (1990).

28   If the movant meets his or her burden, the burden then shifts to the non-movant to show

1   that summary judgment is not appropriate. *Celotex*, 477 U.S. at 324. The non-movant does not

2   meet this burden by showing "some metaphysical doubt as to material facts." *Matsushita Elec.*

3   *Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The mere scintilla of evidence

4   in support of the non-moving party's position is not sufficient, "there must be evidence on which

5   the jury could reasonably find" for the non-moving party. *Anderson*, 477 U.S. at 252.

6   Accordingly, the non-moving party cannot oppose a properly supported summary judgment

7   motion by "rest[ing] on mere allegations or denials in his [or her] pleadings." *Id.* at 256. The

8   non-movant must go beyond the pleadings to designate specific facts showing that there are

9   genuine factual issues that "can be resolved only by a finder of fact because they may reasonably

10  be resolved in favor of either party." *Id.* at 250. If the non-movant fails to make a sufficient

11  showing of an element of his or her case, the movant is entitled to a judgment as a matter of law.

12  *Celotex*, 477 U.S. at 325.

13  **IV. ANALYSIS**

14          At the time of these events, Plaintiff Linworth LLC, a California limited liability

15  corporation, was a member of Stanford Square LLC. Plaintiff Linworth LLC filed a declaratory

16  judgment action in a California Superior Court[2] seeking a declaration that the June 2002

17  assignment from JGR Ventures, *et al.* to the 100 Hamilton Grantor Trust, and Charles A.

18  Ramunno, as trustee, was invalid due to a failure to comply with the right-of-first-refusal

19  provisions in the Stanford Square LLC Operating Agreement.

20          Thereafter, Defendants JGR Ventures and Charles A. Ramunno filed counterclaims against

21  Linworth LLC and Stanford Square LLC and the successor manager of Stanford Square LLC,

22  Floworks, Inc., a Nevada corporation.[3] The Defendants/Counterclaimants also seek declaratory

23  relief. They seek the opposite declaration[4]: that the June 2002 assignment was valid and effective

24

25          [2] The action was removed to this court on diversity jurisdiction grounds.

26          [3] The primary owner of both Linworth LLC and Floworks, Inc. is Lewis E. Graham.

27          [4] This is their first claim for relief. The second claim for relief seeks a declaration that a later
28  modification to the Operating Agreement was invalid, while the third claim for relief seeks a
    declaration that a May 27, 2004 offer of first refusal together with the June 2002 assignment was
    effective to transfer the 2.3% interest – assuming that the original assignment of interest was defective.

1    to transfer JGR Ventures' 2.3% interest in Stanford Square LLC to the 100 Hamilton Grantor
2    Trust.

3           The Stanford Square LLC Operating Agreement specifies that California law is to be
4    applied in interpreting the agreement.  A federal court exercising diversity jurisdiction over the
5    parties looks to the law of the state in which it sits in interpreting corporate agreements.  California
6    law would apply its own laws governing limited liability entities together with the terms of the
7    operating agreement of a specific entity.  All parties in this dispute agree that the correct law to
8    apply is California law and the terms of the Stanford Square LLC Operating Agreement.
9    *Kohlrautz v. Oilmen Participation Corp.*, 411 F.3d 827, 830-31 (9th Cir. 2006) (federal court
10   applies state substantive law in diversity case).

11          Under California law, there may exist two types of legal interest in a limited liability
12   company.  There is a full "membership interest" and a lesser included "economic interest."  See
13   Cal.Corp.Code §17001(n) & (z) (defining "economic interest" and "membership interest").  Both
14   types of interest are assignable.  See Cal.Corp.Code §17301(a)(1) ("A *membership interest* or an
15   *economic interest* is assignable in whole or in part....") (emphasis added).  California Corporations
16   Code §17100(a) states that a person may become a member of a limited liability company by way
17   of an assignment of a membership interest, by complying with §17303(a) and "upon compliance
18   with the articles or organization or the operating agreement...."

19          Under the terms of the Operating Agreement of Stanford Square LLC, a membership
20   interest may be assigned with the consent of the manager, while an economic interest may be
21   assigned with or without the manager's consent.  The provisions of Article 8 of the Stanford
22   Square LLC Operating Agreement govern the assignment of interests.  Article 8.2(a)(1) provides,
23   *inter alia*, that a membership interest may be assigned if the manager gives consent and that
24   consent "may be either granted or withheld in the Manager's sole discretion."  Article 8.3
25   reiterates that the assignment of a membership interest may be granted if the manager consents and
26   that "the granting or denial of which consent shall be in the absolute discretion of the Manager."

27   _____

28   Because the Court finds the June 2002 assignment to have effected the transfer, the second and third
     counterclaims are moot.

Article 8.3 goes on to provide that assignment may be accomplished without the consent of any of the other members and the assignment of an economic interest is effective regardless of the manager's consent. Specifically, Article 8.3 states:

> Substitute Member. No assignee of all or part of the Interest of any Member shall have the right to become a Substitute Member or additional member unless (a) his assignor has stated such intention in the instrument of assignment; (b) the Manager has consented to such admission, the granting or denial of which consent shall be in the absolute discretion of the Manager; and (c) the assignee has executed an instrument satisfactory in form and substance to the Manager, whereby such assignee accepts and agrees to be bound by all the terms and provisions of this Agreement. The substitution of a Member may be effected without the consent of any of the Members. That failure or refusal of the Manager to consent to any such admission shall not affect the validity and effectiveness of any such instrument of assignment delivered to the Company in compliance with Section 8.2 as an assignment of the right to receive Company profits, losses, or distributions with respect to the Interest or part thereof transferred.

There is no genuine issue of fact as to the June 2002 assignment having met all of these requirements. One, the assignor, JGR Ventures, stated its intention in the assignment instrument that the 100 Hamilton Grantor Trust become a member. Two, the Manager, Stanford Square Management Company, consented to the admission of the substitute member. Three, the assignee, the 100 Hamilton Grantor Trust executed an instrument satisfactory to the Manager whereby it agreed to be bound by the terms of the Operating Agreement.

The objecting member, Linworth LLC, and the other Counterclaim Defendants, however, point to Article 8.2(a)(2) of the Operating Agreement and argue that the right-of-first-refusal provision was never complied with by JGR Ventures. Article 8.2(a) prohibits a member from transferring his interest until two requirements are met: (1) the Manager's consent is obtained; and (2) an offer to sell to the company is made at the same price as is offered by the proposed assignee. Once again, there is no genuine dispute that JGR Ventures obtained the consent of the Manager, Stanford Square Management Company. However, there is no evidence that JGR Ventures first offered to sell its 2.3% interest to the company at the same price as the bankruptcy trustee, Stephen Snyder, was willing to pay for it. That is hardly surprising. The June 2002 liability of Joan Rounds to the bankruptcy trustee was unliquidated and, no doubt, complicated. The assignment of

the Stanford Square LLC interest was simply an approach to settlement of what could have be

complicated and expensive litigation.  It is not apparent that JGR Ventures could ever have

complied with the right-of-first-refusal provision in view of the inherent difficulty identifying a

monetary value to the bankruptcy trustee.  Thus it is doubtful that JGR Ventures could have

complied because Article 8.2(a)(2) requires the assigning member to identify the price and to

certify that he is willing to sell the interest to a third party at that price.  That a member's interest

would be assigned to another in settlement of an unliquidated litigation liability, was never

contemplated by the terms of the Operating Agreement.

Consequently, it appears on this record, that the assignor would have been unable to

comply with the right-of-first-refusal provision.  California law does not require a useless act.

JGR Ventures did comply with every other provision.  More importantly, the manager was given

"sole discretion" and the manager did consent.  The Operating Agreement gave the manager "sole

right to manage the affairs of the Company...."  See Operating Agreement Article 6.1; *c.f. S.E.C.

v. Capital Consultants, LLC*, 397 F.3d 733, n.16 (9th Cir. 2005) (court looks to limited liability

company operating agreement to determine whether member or manager had authority to act).  In

exercising its discretion, the manager of Stanford Square LLC made it clear in the instrument

granting consent that the provisions of Article 8.2(a) would not apply.  The manager's consent

specifies, "...the transfer of the same *is not subject to the terms of Paragraph 8.2(a)* of the

Operating Agreement...." (Emphasis added.)   Consequently, the right-of-first-refusal provision in

Article 8.2 did not apply.

Because the Stanford Square LLC Operating Agreement vested sole discretion in the hands

of its manager to give or withhold consent to the assignment of a member's interest, and because

the manager gave its consent and waived the requirements of Article 8.2(a), and because Article

8.2(a) did not by its terms contemplate an offer of first refusal for an assignment of an unliquidated

litigation liability, this Court finds as a matter of law that the June 2002 assignment to the 100

Hamilton Grantor Trust was effective to transfer JGR Ventures' entire interest (the membership

interest and the economic interest).

Therefore, Defendants and Counterclaimants' Motion for Partial Summary Judgment is

Granted.  Plaintiff and Counterclaim Defendants' Motion for Summary Judgment is Denied.
Defendants and Counterclaimants JGR Ventures and Charles A. Ramunno, Trustee are entitled to
a judicial declaration as sought in the Amended Counterclaim's First Claim for Relief.  Therefore,
it is the declaration of this Court, pursuant to Fed.R.Civ.P. Rule 57 and the provisions of 28 U.S.C.
§2201, that the assignment of interest given by JGR Ventures to the 100 Hamilton Grantor Trust,
dated June 22, 2002, and given pursuant to a March 27, 2002 settlement was valid and effective as
an assignment to the 100 Hamilton Grantor Trust of all of JGR Ventures' member and economic
interest in the Stanford Square Limited Liability Company.

The Second and Third Claims for Relief are hereby Denied, as moot.

## V.  CONCLUSION

Defendants and Counterclaimants' Motion for Partial Summary Judgment is Granted as to
the Amended Counterclaim's First Claim for Relief.  Plaintiff and Counterclaim Defendants'
Motion for Summary Judgment is Denied.  JGR Ventures and Charles A. Ramunno, Trustee shall
take judgment against Plaintiff on Plaintiff's Claim.  JGR Ventures and Charles A. Ramunno,
Trustee shall take judgment against Linworth LLC, Floworks, Inc. and Stanford Square LLC on
the Amended Counterclaim's First Claim for Relief.  Pursuant to the terms of the Stanford Square
LLC Operating Agreement, JGR Ventures and Charles A. Ramunno, Trustee are awarded
reasonable attorney's fees and costs.  The Clerk of Court may close the file.

IT IS SO ORDERED.

DATED:  February 6, 2007

_____
Hon. Roger T. Benitez
United States District Judge